SARAH S. BROOKS, State Bar No. 266292
  sbrooks@sycr.com
STRADLING YOCCA CARLSON & RAUTH, P.C.
100 Wilshire Boulevard, 4th Floor
Santa Monica, CA 90401
Telephone:  (424) 214-7000
Facsimile:  (424) 214-7010

Attorneys for Plaintiff
WHAM-O HOLDING, LTD.,
WHAM-O INTERNATIONAL LTD. and
JEFF HSIEH CHENG

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| WHAM-O HOLDING, LTD., WHAM-O INTERNATIONAL, LTD. and JEFF HSIEH CHENG<br><br>Plaintiff,<br><br>vs.<br><br>KYLE EDWIN AGUILAR; WHAM-O MARKETING, INC.; AND DOES 1-10<br><br>Defendants. | CASE NO.  2:16-CV-00694<br><br>**COMPLAINT FOR:**<br>1. **TRADEMARK INFRINGEMENT**<br>2. **FALSE DESIGNATION OF ORIGIN**<br>3. **DILUTION**<br>4. **BREACH OF LICENSE**<br>5. **RESCISSION DUE TO BREACH OF PURCHASE AGREEMENT**<br>6. **RESCISSION DUE TO BREACH OF SETTLEMENT AGREEMENT**<br>7. **FRAUD**<br>8. **BREACH OF IMPLIED CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

Plaintiff, Wham-O Holding, Ltd. Wham-O International, Ltd. and Jeff Hsieh Cheng (collectively "Plaintiffs"), by and through its attorneys, for its Complaint against Defendants Kyle Edwin Aguilar, Wham-O Marketing, Inc., and Does 1-10 (collectively "Defendants"), hereby alleges as follows:

## THE PARTIES

1.     Plaintiff Wham-O Holding, Ltd. ("Plaintiff" or "HOLDING") is, and at all times pertinent to this action has been, a corporation duly organized and existing under the laws of the People's Republic of China, and having its principal place of business in Hong Kong.

2.     Plaintiff Wham-O International, Ltd. ("Plaintiff" or "INTERNATIONAL") is, and at all times pertinent to this action has been, a corporation duly organized and existing under the laws of the People's Republic of China, and having its principal place of business in Hong Kong.

3.     Plaintiff Jeff Hsieh Cheng ("HSIEH") is, and at all time pertinent to this action has been, a Canadian citizen whose primary residence is in Hong Kong.

4.     Upon information and belief, Defendant Kyle Edwin Aguilar ("AGUILAR") an individual residing in Los Angeles County, California.

5.     Upon information and belief, Defendant Wham-O Marketing, Inc. ("MARKETING") is a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business in Los Angeles County, California, with AGUILAR acting as its Chief Executive Officer.

6.     Plaintiffs are ignorant to the true names and capacities of the Defendants sued as DOES 1–10, inclusive, and therefore Plaintiffs have sued them by their fictitious names. Upon information and belief, DOES 1–10 were and are a moving, active, conscious force behind the infringement of Plaintiffs' rights. As such, DOES 1–10 are liable to Plaintiffs.

/ / /

/ / /

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-2-
COMPLAINT

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction based upon  federal question jurisdiction  pursuant to 28 U.S.C. Sections 1331 and 1338(a) and (b) and supplemental jurisdiction pursuant to 28 U.S.C. Section 1367.

8.      This civil action is in part arising under the trademark laws of the United States, particularly 15 U.S.C. Sections 1114(1) and 1125(a).

9.      This Court has personal jurisdiction over Defendant MARKETING pursuant to California Code of Civil Procedure §410.10.  Plaintiffs are informed and believe, and thereon allege, that MARKETING is registered with California's Secretary of State as having its principal place of business in California, MARKETING is engaged in business activities in California, and that MARKETING purposefully avails itself of the benefits and privileges of California.

10.     This Court has personal jurisdiction over AGUILAR pursuant to Ca. Code of Civ. Pro. §410.10.  Plaintiffs are informed and believe, and based thereon allege, that AGUILAR is a California resident, with a residence address within Los Angeles County, California, and as the incorporator, officer, sole shareholder and owner of MARKETING, conducts business within Los Angeles, California.

11.     Plaintiffs are informed and believe, and thereon allege, that DOES 1-10 are subject to this Court's general personal jurisdiction as they maintain sufficient continuous and systematic contacts with California and/or purposefully avails themselves of the benefits and privileges of California.

12.     Venue in this Judicial District is proper under 28 U.S.C. Section 1391, given that a significant portion of the acts and transactions complained of herein were conceived, carried out, made effective, and had effect within the State of California and this Judicial District.

/ / /

/ / /

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-3-
COMPLAINT

## FACTUAL ALLEGATIONS

13.     The name "Wham-O" is synonymous with classic American toys including the Hula Hoop®, the Frisbee®, the Slip 'N Slide®, the Super Ball®, and the Hacky Sack®.

14.     Around January, 2006, Cornerstone Strategic Management Ltd. ("Cornerstone") acquired Wham-O, Inc. a California corporation that owned all the assets, rights, title and good will associated with "Wham-O", Hula Hoop®, the Frisbee®, the Slip 'N Slide®, the Super Ball®, and Hacky Sack, among many other products.  Plaintiff Jeff Hsieh Cheng is the Owner, Chief Executive Officer and Director of Cornerstone.

15.     On October 4, 2010, HSIEH incorporated INTERNATIONAL.

16.     On October 7, 2010, HSIEH incorporated HOLDING.

17.     On July 27, 2011, AGUILAR incorporated MARKETING, with HSIEH's consent.  On information and belief, AGUILAR was then and remains MARKETING's president, CEO and sole shareholder.

18.     All of Wham-O Inc.'s working assets, namely: inventories, cash on-hand, accounts receivables, outstanding sales agreements, fixed assets and debts were assigned and transferred to HSIEH. Thereafter, HSIEH transferred inventories, cash on-hand, accounts receivables, outstanding sales agreements, fixed assets and debts to MARKETING.

19.     Thereafter, in June, 2012, all of Wham-O, Inc.'s intellectual property assets, including patents and trademarks, were assigned and transferred to HOLDING ("Wham-O IP").

20.     HOLDING is the rightful owner of all rights, title and good will associated with Wham-O and its family of over 150 trademarks including, without limitation: WHAM-O (U.S. Reg. Nos. 2654457, 1226066, 0730346); HULA-HOOP (U.S. Reg. 0739307); SLIP 'N SLIDE (U.S. Reg . 0761883); HACKY SACK (U.S. Reg. 1183855); FRISBEE (U.S. Reg. Nos. 1161068, 1151090,

1    4046202, 0679186); SUPERBALL (U.S. Reg. 4161489); MOREY BOOGIE (U.S.

2    Reg. Nos. 1048196, 1278158, 3655896); and BOOGIE (U.S. Reg. Nos. 2496140,

3    4003453) (collectively the "Wham-O Family of Marks").  See, Exhibit A.

4         21.    The Wham-O Family of Marks are inherently distinctive and widely

5    recognized by the consuming public as associated with Wham-O.  Products

6    bearing the Wham-O Family of Marks have been sold worldwide beginning as

7    early as 1957.

8         22.    On July 1, 2012, HSIEH along with Defendants AGUILAR and

9    MARKETING execute an agreement for the Defendants to purchase

10   INTERNATIONAL for $10,971,554 to be paid in installments, plus a 6% per

11   annum interest on the outstanding amount.  The installment payments were

12   scheduled pursuant to Exhibit B appended to the agreement.  The agreement

13   indicates that once all monies are paid in full, all shares and assets of

14   INTERNATIONAL shall be transferred to AGUILAR and MARKETING.  See,

15   Exhibit B, the "Purchase Agreement."

16        23.    To date neither AGUILAR nor MARKETING has made any

17   payments towards the Purchase Agreement.

18        24.    On November 28, 2012, HOLDING entered into two License

19   Agreements, effective as of July 1, 2012, one with MARKETING and one with

20   INTERNATIONAL wherein HOLDING granted exclusive worldwide licenses to

21   MARKETING and INTERNATIONAL to use the Wham-O IP, including the

22   Wham-O Family of Marks, to manufacture, sell, distribute and promote products in

23   exchange for the greater of either a 2% service fee on net revenues or a minimum

24   annual payment.  The minimum service fee in each agreement was set at

25   "$500,000 per year, however the first year the minimum service fee shall be

26   $250,000 per year, and the second year the minimum service fee shall be $375,000

27   per year."  These licenses included the right to assign and sub-license the Wham-O

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-5-
COMPLAINT

IP, for a 2% service fee of net revenues of sub-licensees.  See, Exhibits C and D, the "License Agreements."

25.   On information and belief, since July 2012 Defendants have been and continue to use the Wham-O IP, including the Wham-O Family of Marks, to manufacture, sell, distribute and promote their products.

26.   On information and belief, since July 2012 Defendants have sub-licensed the Wham-O IP, including the Wham-O Family of Marks, multiple times including without limitation, to the following entities: Kiloo, Innovative Concepts, Enchante, Nowstalgic, Alchemy, Lucky Brand Dungarees, Five Below, Idea Village, The Wish Factory, and SOLA Products.

27.   At no point since November 2012, have Defendants remitted either the service fees owed on net revenues pursuant to the License Agreements or the minimum annual payments.

28.   At no point since November 2012, have Defendants accounted for or remitted any of the service fees owed on net revenues from entities granted sub-licenses pursuant to the License Agreements.

29.   During the period from September 6, 2012 through May 13, 2015, Defendants incurred MARKETING business expenses in excess of $2,358,000 on credit cards belonging to INTERNATIONAL and/or HSIEH.  During this period AGUILAR made assurances that these expenses would be reimbursed by MARKETING.  To date, no payments have been received towards these expenses.

30.    On August 8, 2015, as an effort to settle Defendants' breaches under the Purchase Agreement and License Agreements, and because AGUILAR represented to HSIEH that he had investors that wished to purchase MARKETING and INTERNATIONAL, the Parties entered into a settlement agreement.  See, Exhibit E, the "Settlement Agreement."

31.   Pursuant to the Settlement Agreement, HOLDING and HSIEH agreed to discount the amount due under the Purchase Agreement from $10,971,554 to

$7,784,054 and to waive past due service fees (and/or minimum annual payments) under the License Agreements, if MARKETING and INTERNATIONAL were acquired by the third party investors, who would immediately begin making payment towards the discounted outstanding amount of $7,784,054.

32.     Despite assurances from Defendants to the contrary, no third party investors acquired MARKETING or INTERNATIONAL or made any payments towards the purchase of INTERNATIONAL.  Further, to date Defendants have not made any payments towards the discounted amount of $7,784,054, pursuant to the Settlement Agreement.

33.     Therefore, on October 22, 2015 HOLDING issued an official notice of termination to Defendants, terminating the License Agreements.  See, Exhibit F, HOLDING's Termination Letter.

34.     On October 22, 2015 AGUILAR responded to the termination notice from HOLDING by acquiescing and agreeing that the license agreement was terminated.  See, Exhibit G, Email response from Kyle Aguilar dated October 22, 2015.

35.     On information and belief, despite receiving and recognizing the termination of the Licensing Agreements, Defendants continue to use the Wham-O IP, including the Wham-O Family of Marks, in association with their goods. Further, Defendants continue to hold themselves out as associated or endorsed by Wham-O and use Wham-O email addresses for their communications.

36.     On information and belief, despite the Licensing Agreements being terminated on October 22, 2015, Defendants granted sub-licenses to the Wham-O IP after that termination date.

37.     On information and belief, Defendants signed a new sub-license agreement with Lucky Brand Dungarees in December, 2015 and renewed Kiloo's sublicense agreement in December, 2015.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-7-
COMPLAINT

38.   On December 29, 2015, counsel for HSIEH and HOLDING, provided notice of the termination of the Purchase Agreement and Settlement Agreement to the Defendants due to non-payment.  See, Exhibit H, Counsel's Termination Letter.

39.   As of the filing of this complaint, neither Plaintiffs nor Plaintiffs' counsel have received any response to the December 29, 2015 correspondence.

40.   Defendants' on-going use of the Wham-O IP, including the Wham-O Family of Marks, has and continues to cause problems with Plaintiffs' own use and attempts to secure their own licensing and sub-licensing relationships.

41.   On information and belief, Defendants have engaged in fraud on Plaintiffs.  Defendants sent purchase orders to INTERNATIONAL and INTERNATIONAL in turn sent merchandise to Defendants.

42.   On information and belief, Defendants claimed that they sold and delivered the merchandise to Wal-Mart. Defendants sent the Wal-Mart invoices to Wells Fargo for "factoring." Wells Fargo purchased the sales invoices for collection of the payments from Wal-Mart.

43.   A check advance was sent to INTERNATIONAL based on the Wells Fargo Wal-Mart invoices and to reimburse INTERNATIONAL for the merchandise shipped to Defendants.

44.   Later, however, Wells Fargo asked INTERNATIONAL for the check advance to be returned because Wal-Mart never received the goods claimed to have been delivered by Defendants.

45.   Plaintiffs have suffered special damages, by way of prospects and third parties refusing to work with HOLDING based on Defendants' on-going uses of the Wham-O IP.

46.   On information and belief, MARKETING is inadequately capitalized or insured to respond to claims against them; there is no separation between the business activities of MARKETING and the personal activities of AGUILAR;

MARKETING's funds and AGUILAR's funds are co-mingled; MARKETING's funds are used to satisfy AGUILAR's debts; MARKETING's funds are used for AGUILAR's personal travel and entertainment expenses; and MARKETING has disregarded corporate formalities.  MARKETING is the mere instrumentality of AGUILAR's will and shells with no independent direction.  As such, MARKETING is the alter ego of AGUILAR.

47.     On information and belief, MARKETING's president, CEO and sole shareholder is AGUILAR.

48.     Given the alter ego relationship between MARKETING and AGUILAR, Plaintiffs allege that fraud and/or injustice is likely to occur if the separation of entities is not disregarded.

49.     On information and belief, AGUILAR personally participated, directed, controlled, ratified, was the moving force behind, and acted consciously, willfully, deliberately, and knowingly when the Defendants committed the wrongful acts alleged herein, injuring Plaintiff and its rights.

## CLAIM ONE

### (Trademark Infringement Pursuant to 15 U.S.C. § 1114(1))

50.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 49 hereof as if fully stated herein.

51.     The Wham-O Family of Marks are valid, protectable marks.

52.     HOLDING is the rightful owner of all rights and good-will in the Wham-O Family of Marks.  See, Exhibit A.

53.     On information and belief, Defendants have used and are continuing to use the Wham-O Family of Marks in connection with their products without permission or license from HOLDING.

54.     On information and belief, Defendants have and continue to issue sub-licenses to third-parties for the Wham-O Family of Marks, despite

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-9-

COMPLAINT

1  MARKETING's license agreement being terminated and Defendants having no
2  such rights.

3      55.    On information and belief, Defendants continue to use the Wham-O
4  Family of Marks without Plaintiffs' consent and in association with Defendants
5  business, despite all license agreements being terminated.

6      56.    Defendants' conduct is likely to cause confusion among ordinary
7  consumers as to the source, sponsorship, affiliation, or approval of the goods.

8      57.    Defendants' actions have been and are willful, unfair, false and
9  deceptive, in that they tend to mislead, deceive and confuse, and have had and will
10  have the result of misleading, deceiving and confusing the public to believe that
11  Defendants and/or their goods are affiliated with, sponsored or controlled by
12  Plaintiffs.

13      58.    As a consequence, Defendants have traded and are trading upon, and
14  have gained and are gaining public acceptance and other benefits from,
15  HOLDING's favorable reputation and valuable good will, which have accordingly
16  been placed at risk and damaged by Defendants' illegal actions and conduct.

17      59.    The foregoing actions of Defendants constitute trademark
18  infringement by inducing the erroneous belief that Defendants and/or their goods
19  are in some manner affiliated with, originate from, or are sponsored by HOLDING
20  in violation of Lanham Act § 32, 15 U.S.C. §1114.

21      60.    Plaintiffs are informed and believe, and on that ground allege, that
22  Defendants have made and/or will make gains and profits from their unlawful
23  actions as alleged herein, and by reason thereof, HOLDING has been deprived of
24  gains and profits which otherwise would have inured to HOLDING but for such
25  unlawful actions.

26      61.    Plaintiffs have no adequate remedy at law for the injuries alleged in
27  this Count.  The injury is, in part, intangible in nature and not capable of being
28  fully measured or valued in terms of money damages.  Further, the injury is of a

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-10-
COMPLAINT

1  continuing nature and will continue to be suffered so long as Defendants continue

2  their wrongful conduct.

3       62.    Notwithstanding the inadequacy of, and the difficulty of presently

4  fully ascertaining the value of the damage to HOLDING caused by Defendants'

5  wrongful conduct, said conduct has resulted in irreparable, direct and proximate

6  damages to HOLDING and HOLDING is entitled to injunctive relief under 15

7  U.S.C. Section 1116(a).

8       63.    By reason of the aforementioned acts constituting trademark

9  infringement, HOLDING has been damaged and is entitled to monetary relief in an

10  amount to be determined at trial.

11                            **CLAIM TWO**

12       **(False Designation of Origin Pursuant to 15 U.S.C. §1125(a))**

13       64.    Plaintiffs repeat and reallege each and every allegation contained in

14  paragraphs 1 through 63 hereof as if fully stated herein.

15       65.    This claim arises under Section 43(a) of the Lanham Act.

16  Defendants' unauthorized use and continued use in interstate commerce of the

17  Wham-O Family of Marks constitutes a false designation of origin and a false

18  description or representation that has caused and is likely to cause confusion,

19  mistake or deception (a) as to the characteristics, qualities or origin of Defendants'

20  goods, (b) as to an affiliation, connection or association between HOLDING and

21  Defendants, and (c) as to the sponsorship or approval of Defendants' goods by

22  HOLDING.

23       66.    Such actions, as used in commercial advertising, have misrepresented

24  and do misrepresent the nature, characteristics or qualities of Defendants' goods

25  and/or commercial activities.

26       67.    Defendants, further, continue to hold themselves out as affiliated with

27  Wham-O by using the Wham-O name, logo and continuing to use Wham-O email

28  addresses.

68.     Upon information and belief, Defendants have intentionally and falsely designated the origin of their goods by adopting and using, without permission or license, the same mark as the Wham-O Family of Marks for its goods so as to profit from HOLDING's reputation by confusing the public as to the source, origin, sponsorship or approval of Defendants' goods, with the intention of deceiving and misleading the public at large, and of wrongfully trading on the goodwill and reputation of HOLDING.

69.     The activities of Defendants' complained of herein have caused and, unless enjoined, will continue to cause substantial and irreparable harm to HOLDING, its business reputation and its goodwill, for which HOLDING is without adequate remedy at law.  Such activities have also caused HOLDING monetary loss and damage including, but not limited to, the loss of profits in an amount not yet determined.

70.     Further, the injury is of a continuing nature and will continue to be suffered so long as Defendants continue their wrongful conduct.  Notwithstanding the inadequacy of, and the difficulty of presently fully ascertaining, the value of the damage to HOLDING caused by Defendants' wrongful conduct, HOLDING is informed and believes, and on that ground alleges, that said conduct has resulted in irreparable, direct and proximate damages to Plaintiff.

## CLAIM THREE

### (Dilution Pursuant to 15 U.S.C. §1125 (c))

71.      Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 70 hereof as if fully stated herein.

72.     By the acts described above, Defendants have intentionally and willfully diluted, and are likely to dilute, the distinctive quality of the famous Wham-O Family of Marks in violation of section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-12-
COMPLAINT

73.     The goods offered under the Wham-O Family of Marks have been widely advertised, promoted, and distributed to the purchasing public throughout the United States since as early as 1957.

74.     Wham-O's goods, offered under the Wham-O Family of Marks, have come to be known to the purchasing public throughout the United States as trustworthy, reputable, and of high quality.  As a result, the Wham-O Family of Marks, and the goodwill associated therewith, is of great value to HOLDING.

75.     By virtue of the wide renown acquired by the Wham-O Family of Marks, the Wham-O Family of Marks are famous, and became so prior to Defendants' acts complained of herein.

76.     Defendants' unauthorized uses of the Wham-O Family of Marks in connection with the continued sub-licensing, as well as the manufacture, advertisement, promotion and offering of goods incorporating the Wham-O Family of Marks has caused and is likely to continue to cause dilution by blurring the distinctive qualities of the famous Wham-O Family of Marks.

77.     Defendants' acts are likely to tarnish, injure, or trade upon HOLDING's business, reputation, or goodwill, and to deprive HOLDING of the ability to control the use of its Wham-O Family of Marks and quality of goods associated therewith.

78.     On information and belief, Defendants' dilution has been willful and deliberate.

79.     By reason of the aforementioned acts constituting trademark dilution, HOLDING has been damaged and is entitled to monetary relief in an amount to be determined at trial.

80.     Due to Defendants' actions constituting trademark dilution, HOLDING has suffered and continues to suffer great and irreparable injury, for which HOLDING has no adequate remedy at law.

81.     The activities of Defendants' complained of herein have caused and, unless enjoined, will continue to cause substantial and irreparable harm to HOLDING, its Wham-O Family of Marks, the related goodwill, and HOLDING's business reputation for which HOLDING is without adequate remedy at law.

82.     HOLDING has no adequate remedy at law for the injuries alleged in this Count.  The injury is, in part, intangible in nature and not capable of being fully measured or valued in terms of money damages.  Further, the injury is of a continuing nature and will continue to be suffered so long as Defendants continue their wrongful conduct.

83.     Notwithstanding the inadequacy of, and the difficulty of presently fully ascertaining the value of the damage to HOLDING caused by Defendants' wrongful conduct, said conduct has resulted in irreparable, direct and proximate damages to HOLDING and HOLDING is entitled to injunctive relief under 15 U.S.C. Section 1125(c) and 1116(a).

## CLAIM FOUR

### (Breach of Written License Agreement)

84.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 83 hereof as if fully stated herein.

85.     On or around November 28, 2012, HOLDING entered into a written Licensing Agreement with MARKETING.  See, Exhibit C.  Included within the terms of the agreement are provisions requiring Defendants to pay HOLDING for use of the Wham-O IP, including without limitation the Wham-O Family of Marks.  The payment was agreed to be the greater of either a 2% service fee on net revenues or a minimum annual payment.  The minimum annual payment was set at "$500,000 per year, however the first year the minimum service fee shall be $250,000 per year, and the second year the minimum service fee shall be $375,000 per year."  See, *Id*., p. 1 and 6.

86.     Said Licensing Agreement further provides that should any party be forced to enforce the agreement or recover damages by reason of any alleged breach of the agreement, "the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses incurred thereby, including, but not limited to, such amounts as the Court may judge to be reasonable attorneys' fees for the legal services rendered on behalf of the party finally prevailing in any such action or proceeding." See, *Id*., p. 3 and 8.

87.     At all times relevant to this action, said Licensing Agreements have remained valid, binding and enforceable.

88.     Plaintiffs have at all times performed under the terms of the Licensing Agreements in the manner specified by said agreement, specifically allowing Defendants to use the Wham-O IP, including the Wham-O Family of Marks.

89.     However, despite Plaintiffs' performance under the agreement, Defendants have not made any service fee payments or the minimum annual payments to HOLDING.  In October, 2015, Plaintiff provided notice to Defendants of this failure and of termination and Defendants failed to cure such deficiencies.

90.     Plaintiffs have been directly damaged from Defendants' failure and refusal to perform their obligations under the contract as more fully described, *supra*.  Defendant's conduct has resulted in direct, proximate, and foreseeable losses in an amount to be proven at trial, but believed to exceed $1,125,000. Additionally, pursuant to the parties' agreement, Plaintiffs are entitled to reasonable attorneys' fees associated with bringing this action.

91.     Defendants' conduct as alleged has been willful and with continued conscious disregard for Plaintiffs' rights and applicable law.  Plaintiffs are therefore entitled to exemplary and punitive damages in an amount to be determined at trial.

///

///

**CLAIM FIVE**

**(Rescission Due To Breach Of Purchase Agreement)**

92.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 91 hereof as if fully stated herein.

93.     The parties executed a written Purchase Agreement on or around July 1, 2012, for AGUILAR and MARKETING to purchase INTERNATIONAL.  See, Exhibit B.

94.     Plaintiffs have at all times performed under the terms of the contract in the manner specified by the contract.  Specifically, Plaintiffs transferred to Defendants the assets and inventory in Exhibit A to the Purchase Agreement.

95.     Defendants, however, have failed to perform and breached the Purchase Agreement.  Specifically, Defendants MARKETING and AGUILAR have not made any payments pursuant to Schedule B due under the Purchase Agreement.

96.     Defendants' offered consideration has failed and Defendants have been given ample notice and opportunity to cure said failure.  Defendants' conduct and on-going inability to cure said failure, is a clear and unambiguous indication that they have no intent to perform their obligations under the contract. Defendants' conduct as alleged has been willful and with continued conscious disregard for Plaintiffs' rights and applicable law.

97.     Plaintiffs have been directly damaged from Defendant's failure and refusal to perform their obligations under the contract as more fully described, *supra*.  Plaintiffs are therefore entitled to rescission of the Purchase Agreement, to clear any prospective cloud over the assets there in assigned and for any remaining assets and inventory to be returned to Plaintiffs'.

///

///

///

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-16-
COMPLAINT

## CLAIM SIX

### (Rescission Due To Breach Of Settlement Agreement)

98.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 97 hereof as if fully stated herein.

99.    The parties executed a written Settlement Agreement on or around August 8, 2015.  See, Exhibit E.

100.    Plaintiffs understood the intent of this Settlement Agreement as a good faith effort to resolve and settle Defendants' breaches under the Purchase Agreement and License Agreements.

101.    Under the Settlement Agreement HSIEH agreed to waive passed due service fees and discount the purchase price of INTERNATIONAL to $7,784,054 ("Remaining Cash Payment"), if Defendants immediately consummated an acquisition of MARKETING and INTERNATIONAL, by third-party investors, and began making payments against the Remaining Cash Payment.

102.    There was, however, no meeting of the minds on the material intent of the Settlement Agreement as Defendants made no efforts to alter their on-going conduct, as Defendants failed to secure investors and have not made any payments towards the Remaining Cash Payment.

103.    Plaintiffs have at all times performed under the terms of the Settlement Agreement in the manner specified by said agreement.

104.    Given Defendants' lack of any efforts to resolve and settle their past breaches by present steadfast conduct, Defendants' intent can and should be imputed as not aligning with Plaintiff's intent.  Defendants' continued conduct is a clear and unambiguous indication that they never had any intent to perform their obligation under the Settlement Agreement.  Defendants' conduct as alleged has been willful and with continued conscious disregard for Plaintiffs' rights and applicable law.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-17-
COMPLAINT

105.   Plaintiffs have been directly damaged from Defendant's failure and refusal to perform their obligations under the contract as more fully described, *supra*.  Plaintiffs are therefore entitled to rescission of the Settlement Agreement, as without mutuality no contract can be consummated.

## CLAIM SEVEN

### (Fraud)

106.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 105 hereof as if fully stated herein.

107.   On information and belief, Defendants have engaged in fraud on Plaintiffs.  Defendants sent purchase orders to INTERNATIONAL and INTERNATIONAL in turn sent merchandise to Defendants.

108.   On information and belief, Defendants claimed that they sold and delivered the merchandise to Wal-Mart. Defendants sent the Wal-Mart invoices to Wells Fargo for "factoring." Wells Fargo purchased the sales invoices for collection of the payments from Wal-Mart.

109.   A check advance was sent to INTERNATIONAL based on the Wells Fargo Wal-Mart invoices and to reimburse INTERNATIONAL for the merchandise shipped to Defendants.

110.   Later, however, Wells Fargo asked INTERNATIONAL for the check advance to be returned because Wal-Mart never received the goods claimed to have been delivered by Defendants.

111.   Upon information and belief, instead of sending the goods to its vendor, Wal-Mart, as claimed, in fact, Defendants had not shipped the goods to Wal-Mart and Defendants knew its representation to the contrary was false.

112.   Upon information and belief, Defendants intended that both Plaintiffs and Wells Fargo rely on the representation so that a check advance would be issued to Plaintiffs.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

1    113.   Plaintiffs and Wells Fargo reasonably relied on Defendants

2 representation.

3    114.   Plaintiff was harmed because Wells Fargo asked to be reimbursed and

4 because Defendants obtained the goods from Plaintiffs free of charge.

5    115.    Plaintiffs' reliance on Defendants representation was a substantial

6 factor in causing their harm.

7                              **CLAIM EIGHT**

8                       **(Breach of Implied Contract)**

9    116.   Plaintiffs repeat and reallege each and every allegation contained in

10 paragraphs 1 through 115 hereof as if fully stated herein.

11    117.   By virtue of the facts alleged above, an implied in fact contract

12 existed between Plaintiffs and Defendants, as AGUILAR and/or MARKETING

13 borrowed $2,358,000 on Plaintiffs' credit cards for MARKETING's expenses with

14 an agreement to reimburse all of the loaned money.

15    118.   Plaintiffs have performed and continue to perform all obligations

16 required pursuant to the implied agreement, including without limitation allowing

17 charges to be made on their credit cards and servicing those obligations.

18    119.   Defendants breached the implied agreement by failing to make any

19 payments towards these obligations.

20    120.   Defendants have further breached the implied agreement by failing to

21 provide assurances that Defendants intended to perform their obligations under this

22 agreement.

23    121.   As a direct, legal and proximate result of Defendants' breach of the

24 implied agreement, Plaintiffs have suffered damages in the minimum amount of

25 $2,358,000, plus interest and penalties not yet fully ascertained.

26 / / /

27 / / /

28 / / /

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-19-
COMPLAINT

# PRAYER FOR RELIEF

Plaintiffs requests that the Court find in their favor and against Defendants, and that the Court grant Plaintiffs the following relief:

a. An injunction, permanently enjoining Defendants their agents, servants, employees, successors, assigns, and all those in privity with Defendants from using the Wham-O name, any Wham-O IP inclusive of the Wham-O Family of Marks.  This includes in association with any goods, services, business names or means of communication;

b. An order that Wham-O Marketing, Inc. be suspended and terminated;

c. An accounting of Defendants sales, net revenue, gross revenue and sub-license agreements;

d. An award to HOLDING of expectancy damages in an amount to be determined at trial, but not less than the greater of past royalties due from MARKETING's and any sub-licensee's sale of products incorporating Wham-O IP or the minimum annual payments due under the Licensing Agreements;

e. A finding that Defendants materially breached the Licensing Agreement and failed to cure said breach;

f. The complete rescission of the July 1, 2012 Purchase Agreement;

g. An award returning all remaining Wham-O inventory controlled by MARKETING to HOLDING, INTERNATIONAL and/or HSIEH;

h. The complete rescission of the August 8, 2015 Settlement Agreement;

i.      Reimbursement of all MARKETING's expenses, estimated at $2,358,000, charged to credit cards belonging to HOLDING, INTERNATIONAL and/or JEFF;

j.      A finding that Defendants are willful trademark infringers and award all other damages, including treble damages;

k.      An award of exemplary or punitive damages;

l.      Attorney's fees and costs incurred in this action; and

m.      Such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.


DATED:  February 1, 2016                STRADLING YOCCA CARLSON & RAUTH, P.C.


                                        By:   /s/ Sarah S. Brooks
                                              Sarah S. Brooks
                                              Attorneys for Plaintiff
                                              WHAM-O HOLDING, LTD.,
                                              WHAM-O INTERNATIONAL
                                              LTD., and JEFF HSIEH CHENG